**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| ELISSA BYINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | Case No.: 4:26-cv-556 |
| HEYA PARK HILLS RETAIL, LLC ) | |
| ) | |
| & ) | |
| ) | |
| HEYA RETAIL LLC ) | |
| ) | |
| & ) | |
| ) | |
| HEYA LLC ) | |
| ) | |
| & ) | |
| ) | |
| HEYA MISSOURI HOLDINGS, INC. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINAT FOR DAMAGES AND JURY DEMAND**

COMES NOW Plaintiff Elissa Byington ("Plaintiff"), by and through undersigned counsel,

for her Complaint for damages and jury demand pursuant to 29 U.S.C. § 2601, et seq., Family

Medical Leave Act ("FMLA") and 29 U.S.C. § 201 et seq., Fair Labor Standards Act ("FLSA"),

and hereby states as follows:

**PARTIES**

1.      Plaintiff is a natural person who resides, and at all times relevant herein resided, in

the State of Missouri.

2. Defendant Heya Retail LLC is, and at all times relevant herein was, a company registered to do business in, and in good standing with, the State of Missouri with its registered office located at 9666 Olive Boulevard, Suite 690, Saint Louis, Missouri 63132.

3. Defendant Heya LLC is, and at all times relevant herein was, a company registered to do business in, and in good standing with, the State of Missouri with its registered office located at 9666 Olive Boulevard, Suite 690, St. Louis, Missouri 63132.

4. Defendant Heya Missouri Holdings, Inc. is, and at all times relevant here was, a company registered to do business in, and in good standing with, the state of Missouri with its principal office located at 233 Fox Hill Road, Saint Charles, Missouri 63301.  Heya Missouri Holdings, Inc.'s registered agent's address as 9666 Olive Bouelvard, Suite 690, St. Louis, Missouri 63132.

5. Defendant Heya Park Hills Retail, LLC ("Heya Park Hills") is, and at all times relevant herein was, a company registered to do business in, and in good standing with, the State of Missouri with its principal location at 100 Strauss Drive, Park Hills, Missouri 63601. Defendant Heya Park Hill's registered agent's address is 9666 Olive Boulevard, Suite 690, St. Louis, Missouri 63132.

6. Upon information and belief, Defendant Heya Retail LLC, Heya LLC, and Heya Missouri Holdings, Inc. (collectively, "Heya Corporation") were formed by the same owners and operators in order to control and operate a series of retail marijuana dispensaries under one joint enterprise.

7. Upon information and belief, Heya LLC is the sole owner of Heya Retail LLC and Heya Missouri Holdings, Inc.

8.      Upon information and belief, Heya LLC, by and through Heya Missouri Holdings, Inc. and Heya Retail, LLC, is the majority owner of several subsidiary marijuana dispensaries, including Heya Park Hills.

9.      Upon information and belief, Heya Corporation maintains control over the operations, management, policies, procedures, and actions of its owned and controlled entities, including Heya Park Hills.

10.     Upon information and belief, Heya Corporation has no business purpose other than to manage and control its subsidiary dispensaries, including Heya Park Hills.

11.     Upon information and belief, Heya Corporation maintains final control over the employment, hiring, firing, and pay of its owned and controlled entities, including Heya Park Hills.

12.     Carl Bearden ("Bearden") has represented himself to be a "Manager" of Heya Park Hills, Heya Retail LLC, and Heya LLC, as well as "Secretary" of Heya Missouri Holdings, Inc., to the Missouri Secretary of State, showing similar management and control across all related entities.

13.     Heya LLC, Heya Park Hills and several other related "Heya" entities are joined as owners of the fictious name "Heya Wellness" filed with the Missouri Secretary of State.

14.     Bearden was listed as the owner or authorized signature of each entity joined as owners of this fictious name, including Heya LLC and Heya Park Hills.

15.     Heya Corporation and Heya Park Hills thus operate as a joint enterprise and joint employer of Plaintiff.

## JURISDICTION AND VENUE

16.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

17.    Defendants purposefully availed themselves to the jurisdiction of this Court by doing business in the state and specifically counties within this Court's jurisdiction.

18.    Defendants' principal places of business are each within this Court's jurisdiction and they are thus domiciled within this Court's jurisdiction.

19.    Plaintiff is domiciled in Desloge city, St. Francois county, Missouri, giving this Court jurisdiction over Plaintiff.

20.    Plaintiff's causes of action arise out of unlawful practices that occurred, as alleged herein, in Park Hills city, St. Francois County, Missouri, where Defendants conduct business and where Plaintiff worked.

21.    The acts or omissions that give rise to this cause occurred in St. Francois County, Missouri and Plaintiff was damaged by Defendants in St. Francois County, Missouri, making this the proper venue pursuant to 28 U.S.C. § 1391.

22.    This Court has subject matter jurisdiction over these claims as they arise out of the federal statutes, FMLA, and FLSA, and thus have federal question jurisdiction pursuant to § 1331.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

23.    The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

24.    Upon information and belief, Defendants employ fifty (50) or more employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar work weeks during Plaintiff's employment.

25.    Upon information and belief, Defendants' locations include Heya Park Hills, as well as a location at 4300 N. Service Road, St. Peters, Missouri 63376 ("Heya St. Peters"), a

location at 10417A St. Charles Rock Road, St. Ann, Missouri 63074 ("Heya St. Ann"), and its corporate location at 233 Fox Hill Road, St. Charles, Missouri 63301.

26.     Plaintiff began working for Defendants at their Heya Park Hill location in 2022.

27.     Plaintiff gave birth to a child on July 1, 2023.

28.     Before Plaintiff gave birth, Plaintiff asked Defendants to confirm that she would have a place to express breastmilk when she returned as she was unsure of whether Defendants had previously employed a breastfeeding individual.

29.     When Plaintiff returned to work after giving birth, Plaintiff again requested to be able to express breastmilk throughout the workday as she had given birth and was producing breastmilk.

30.     Defendants told Plaintiff that the only place she was able to express breastmilk on the premises was in a restroom that was used by all employees.

31.     This restroom did not have a door that could be locked to prevent entrance into the restroom. It only had locks on individual restroom stalls.

32.     This would mean that in order to express her breastmilk in private, Plaintiff would be required to either sit on or navigate around a toilet, all the while others could still enter the restroom.

33.     When Plaintiff voiced this concern, she was told she could place a chair the entrance way to the bathroom and was given a sign to hang that depicted a photograph of a cow and said "pumping in progress."

34.     This option was not only offensive to Plaintiff, but did not offer her a safe and private place to express her breastmilk.

35.     Plaintiff continued to request a private location to express breastmilk and her request was repeatedly denied.

36.     Plaintiff's manager at Heya Park Hills represented to Plaintiff that a request was submitted to Heya Corporation, but that no options other than a restroom were provided.

37.     Defendants did not provide Plaintiff with a private and secure area for her to express her breastmilk at any time in the year after her child's birth in July 2023.

38.     Defendants additionally would frequently refuse to allow Plaintiff the necessary time to express breastmilk, leading to pain from waiting too long, and in some instances, leading to breastmilk expressing on its own and seeping into Plaintiff's clothing.

39.     Plaintiff endured entire shifts with Defendants without being given the ability to express her breastmilk.

40.     Defendants did not change, improve, or otherwise alter their practices in regard to Plaintiff's need to express her breastmilk throughout the entire year after Plaintiff gave birth and was producing breast milk.

41.     Plaintiff developed candidiasis and pruritus of the breast, as well as mastitis after being required to delay breastfeeding to the point of her breastmilk seeping through her clothing.

42.     Plaintiff was eventually forced halt the production of breastmilk because she was not being given adequate time to express her breast milk throughout the workday.

43.     On or about August 12, 2024, Plaintiff requested that she be able to use her Family Medical Leave Act ("FMLA") leave to care for her sick grandmother.

44.     Plaintiff advised Defendants that her grandmother was akin to a parent when requesting her leave.

45.    Plaintiff was thus entitled to FMLA leave for her grandmother as her grandmother was *in loco parentis*.

46.    At that time, Plaintiff had worked an excess of 1,250 hours in the past twelve months.

47.    At that time, Plaintiff had worked for Defendant for the preceding twelve (12) months.

48.    Defendants initially refused to allow Plaintiff FMLA leave.

49.    This was interference with Plaintiff's rights under FMLA.

50.    On or about September 4, 2024, Plaintiff was finally given approval to submit her FMLA leave certification to Defendants.

51.    Defendants conditionally approved an FMLA leave to occur from September 10, 2024, through September 24, 2024.

52.    On or about September 16, 2024, Defendants' representative, Ashley Fritz ("Fritz") advised Plaintiff that her FMLA leave was approved and confirmed that Plaintiff was entitled to twelve (12) weeks of leave.

53.    After Plaintiff returned from her intermittent FMLA leave that occurred from September 10, 2024, through September 24, 2024, she immediately began to be scheduled for less hours than was typical prior to her using her FMLA leave.

54.    Plaintiff had been working an excess of thirty-five (35) hours each week prior to her FMLA leave.

55.    Upon Plaintiff's return, she was scheduled to work a maximum of twenty (20) hours a week, despite being a full-time employee.

56. Reducing Plaintiff's hours was an act of retaliation against Plaintiff for using her FMLA leave.

57. On several occasions when Plaintiff was scheduled to work, she would arrive at work at the scheduled time only to be sent home before the end of her shift and thereby reducing her hours even further.

58. As Defendant had no legitimate reason to send Plaintiff home before the end of her scheduled shifts, this was a further act of retaliation against Plaintiff for using her FMLA leave.

59. Defendants then advised Plaintiff that all tips received would be "pooled" and that managers would now be included in receiving a share of the tips.

60. Defendants' managers were not entitled to a portion of their employees' tips.

61. This illegal action was further retaliation against Plaintiff for her use of FMLA leave.

62. When Plaintiff advised that she believed that a policy requiring her to share tips with her manager was illegal, she was instructed to accept the policy or quit.

63. On or about February 26, 2025, Plaintiff requested to use her intermittent FMLA leave from March 3, 2025 through March 10, 2025 in order to care for her grandmother.

64. Plaintiff immediately received pushback from her manager for this request.

65. Only after much back and forth was Plaintiff given permission to use her approved FMLA leave.

66. On or about March 8, 2025, Plaintiff received a text message from a co-worker that included a message from Defendants' manager advising that on that day, female employees would receive a free item and an additional twenty percent off on purchases on top of their normal employee discount of thirty percent off.

67. While on a short break from caring for her grandmother, Plaintiff stopped at Defendants' store to make a purchase using the discount offered to her.

68. Plaintiff's co-worker completed the sale and applied the discount under the same terms as Plaintiff had understood them.

69. When Plaintiff returned days later, Defendants continued to treat Plaintiff negatively.

70. Then, on or about March 21, 2025, Defendants terminated Plaintiff.

71. Defendants alleged that it was terminating Plaintiff because she "stole company property."

72. After further inquiry, Defendants admitted to Plaintiff that the alleged stolen property were the items she purchased using the discount she was explicitly told in writing she was eligible to use.

73. Upon information and belief, no other employees that had not utilized FMLA leave were terminated or otherwise reprimanded for using the offered discount.

74. Upon information and belief, Defendant actually terminated Plaintiff because she exercised her right to FMLA leave.

75. Prior to requesting FMLA leave, Plaintiff was not subjected to any discipline, write up or otherwise counseled for any behaviors or performance.

76. No events occurred from the date Plaintiff requested her FMLA leave to the date of her termination that would legitimately justify her termination.

77. Upon information and belief, similarly situated employees whose time off of work was not related to FMLA leave were not treated in a negative fashion upon their return to work.

78.      Upon information and belief, similarly situated employees that had not requested FMLA leave did not have their hours reduced.

79.      Prior to her termination, Plaintiff did not engage in any actions that would give cause for termination.

80.      Prior to her termination, Plaintiff was not disciplined or written up for any conduct that would warrant termination.

81.      As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff has suffered, and continues to suffer, and will in the future suffer irreparable damages, including but not limited to lost wages, lost front pay, lost benefits, embarrassment, fear, humiliation, stress, and other garden variety emotional distress.

## COUNT I
## FMLA INTERFERENCE
*Violation of 29 U.S.C. § 2615*

82.      The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

83.      For all times relevant herein, Defendants employed more than fifty (50) employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar weeks during Plaintiff's employment.

84.      At all times pertinent herein, Defendants were an "employer" subject to 29 U.S.C. § 2601 *et seq*., the Family and Medical Leave Act.

85.      Prior to taking FMLA, Plaintiff worked at least 1,250 hours for Defendants during the rolling 12-month period immediately preceding requesting FMLA. These 1,250 hours were worked at a worksite at which 50 or more employees were employed were employed within the requisite radius.

86. Therefore, for all times relevant herein, Plaintiff was an eligible employee under the FMLA and entitled to FMLA leave.

87. Plaintiff's request for FMLA leave was related to caring for her grandmother, who for all intents and purposes was a parent to Plaintiff, making her *in parentis loco*.

88. Plaintiff was thus entitled to FMLA leave to care for her grandmother.

89. Defendants obfuscated the FMLA process when it refused to provide Plaintiff with the necessary information for several weeks.

90. Upon information and belief, Defendants did so in the hope that Plaintiff would no longer pursue her legal right to FMLA leave.

91. When Plaintiff attempted to use her FMLA leave, Defendants attempted to dissuade her from doing so or otherwise imply that she was not authorized to use her leave, despite meeting all conditions of FMLA.

92. Defendants' interference with Plaintiff's FMLA leave was in direct violation of 29 U.S.C. § 2615, which prohibits any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise the use of FMLA leave.

93. As a direct and proximate result of Defendants' FMLA interference, including its impermissible attempts to dissuade Plaintiff's use of FMLA leave, its practice of punishing Plaintiff for using her intermittent FMLA leave through its withholding of work both in its scheduling and in sending Plaintiff home during her shift for no legitimate reason and ultimately through its termination of Plaintiff, Plaintiff has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants Heya Park Hills Retail, LLC, Heya Retail LLC, Heya LLC, and Heya

Missouri Holdings, Inc. for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand Dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT II
## FMLA RETALIATION
*Violation of 29 U.S.C. § 2615*

94.     The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

95.     For all times relevant herein, Defendants employed more than fifty (50) employees engaged in commerce or activity affecting commerce in twenty (20) or more calendar weeks during Plaintiff's employment.

96.     At all times pertinent herein, Defendants were an "employer" subject to 29 U.S.C. § 2601 *et seq.*, commonly known as the Family and Medical Leave Act or FMLA.

97.     Prior to taking FMLA leave, Plaintiff worked at least 1,250 hours for Defendants during the rolling 12-month period immediately preceding requesting FMLA leave. These 1,250 hours were worked at a worksite wherein 50 or more employees were employed within the requisite radius.

98.     Therefore, for all times relevant herein, Plaintiff was an eligible employee under the FMLA and entitled to FMLA leave.

99.     Plaintiff's request for FMLA leave was related to caring for her grandmother, who for all intents and purposes was a parent to Plaintiff, making her *in parentis loco*.

100.    Plaintiff was thus entitled to FMLA leave to care for her grandmother.

101.    Plaintiff followed Defendants' policies and requirements for taking FMLA leave.

102.    Defendants confirmed, in writing, that Plaintiff was approved for FMLA leave.

103.    Plaintiff's right to take FMLA leave was statutorily protected.

104.    Defendants were aware that Plaintiff took FMLA leave and that she was eligible and entitled to take FMLA leave.

105.    Despite being eligible and entitled to take FMLA leave, Defendants engaged in actions that contradicted Plaintiff's statutory rights and/or interrupted her use of FMLA leave.

106.    Defendants attempted to prevent Plaintiff from utilizing her FMLA leave.

107.    After returning from FMLA leave, Defendants cut Plaintiff's hours significantly, as well as treated her more negatively than her similarly situated co-workers that did not use FMLA leave.

108.    Upon information and belief, no other employees were questioned or punished for returning from non-FMLA related leave.

109.    Because of her use of FMLA leave, Defendants ultimately terminated Plaintiff.

110.    Defendants terminated Plaintiff without any legitimate reason or cause.

111.    Defendants' purported reason for termination was clearly pretextual.

112.    Upon information and belief, no other similarly situated employees that did not use FMLA leave were terminated for the same action in which Plaintiff was terminated.

113.    Upon information and belief, the supervisor who approved the actions for which Plaintiff was terminated was not also terminated.

114.    Upon information and belief, Plaintiff's termination was causally related to taking FMLA leave.

115.    Upon information and belief, Plaintiff's termination was in retaliation for using FMLA leave.

116.    Defendants' termination of Plaintiff was without any just cause.

117.    Defendants did not contest Plaintiff's application for unemployment benefits, which it could have done if he was actually terminated for cause.

118.    Defendants' termination of Plaintiff was in direct violation of 29 U.S.C. § 2615 which prohibits such retaliatory conduct.

119.    As a direct and proximate result of Defendants' FMLA retaliation, Plaintiff has incurred past loss of benefits and wages, continues to incur a loss of benefits, and will incur a loss of benefits in the future.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants Heya Park Hills Retail, LLC, Heya Retail LLC, Heya LLC, and Heya Missouri Holdings, Inc. for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand Dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT III
## PUMP ACT OF THE FLSA
*Violation of 29 U.S.C. § 201 et seq.*

120.    The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

121.    FLSA defines an employer as any person acting directly or indirectly in the interest of an employer in relation to an employee. § 203.

122.    FLSA defines an employee as any individual employed by an employer. *Id.*

123.    An employer is required to provide a reasonable break time for an employee to express breast milk for such employee's nursing child for one year after the child's birth each time such employee has need to express the milk. § 218(d).

124.    The employer must provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public to express breastmilk. *Id.*

125.    Defendants routinely failed to provide Plaintiff with reasonable break times for Plaintiff to express her breastmilk in the year following the birth of her child.

126.    Defendants routinely failed to provide Plaintiff with a reasonable place to express her breastmilk in the year following the birth of her child.

127.    Defendants did not have a private location on its premises that was provided to Plaintiff to express her breastmilk for the entire period in which Plaintiff breastfed.

128.    The refusal to allow Plaintiff adequate time to breast feed resulted in damages including but not limited to, lost wages, emotional distress, physical injury, costs, and attorney's fees.

129.    Defendants' actions were willful and intentional in refusing to provide a safe and private place for Plaintiff to breastfeed consistently throughout Plaintiff's entire time breastfeeding.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendants Heya Park Hills Retail, LLC, Heya Retail LLC, Heya LLC, and Heya Missouri Holdings, Inc. for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

130.    Plaintiff demands a trial by jury as to any and all counts and/or allegations alleged in this Petition for Damages that are so triable.

Dated: April 15, 2026

Respectfully submitted,

**SPARKS LAW FIRM**

By:    /s/ Samantha J. Sparks
       Samantha J. Sparks, #72058MO
       2025 Zumbehl Road, #102
       St. Charles, MO 63303
       P: (636) 373-9375
       F: (314) 451-2567
       sam@sparks-legal.com

*Attorney for Plaintiff*